Good morning, your honors. My name is Nathan Dershowitz. I'd like to reserve three minutes of my time, if that's okay. In my allotted time, I'd like to try to address two issues, both of which I think need both simplification and clarification. They are the district court's race judicata and final judgment decision, and then Judge Srebenosin's decision in Petaluma, and I think both need clarification. With respect to Judge Sanchez's decision on race judicata, he basically avoided the substantive question that's before this court, and that was before him. And he did so by initially stating a principle of law, which the IRS spends a lot of time on, on the brief, but we don't contest at all in the context of this case. That statement is that when a federal court proceeds to final judgment on the merits, however, the final judgment has race judicata effect, and a subsequent proceeding and any collateral attack based on lack of subject matters jurisdictions are barred. We're not contesting that principle of law. What we are seriously contesting is the other statement made by the judge, which was that notwithstanding the Third Circuit's partial reversal of this court's judgment, there could be no doubt that the Third Circuit's presidential decision constituted a final judgment on the merits for these consolidated appeals. Judge Sanchez and the IRS are disregarding the fact that the prior residency case, which I argued, involved the consolidation of appeals from a number of judgments below, all of which were inextricably intertwined with the residency decision. The reversal in part by this court, therefore, required that these prior judgments be modified, amended, or in a couple of cases, maybe even affirmed. But something had to be done by the district court, and the district court understood that. Let me be very specific as to what needed to be done. Actually, a complicated case, perhaps because of the many proceedings involved, but I was reading along with you in your recitation, which apparently comes from chemical lean and tank lines. You read it almost word for word. It seemed to me that this is the end all, and this really just decides the case completely, because if it is res judicata as to all prior proceedings, it seems to me you're done, because the final judgment is folded into the final decision of the court, and there's nothing left to litigate. But there are outstanding major questions. For example, the Virgin Islands had filed its own actions against the FPAS. Judge Sanchez dismissed all of that because he found that all five of the members of the Vento family were not residents of the Virgin Islands. All five. That's what he found. Correct. And this court reversed as to two, finding that Richard and Lana, the parents, were residents of the Virgin Islands. So the decision, the judgment that dismissed that, had to be modified, because right now, if that decision was final, the Virgin Islands gets no money. Yes. And it's all consolidated in the appeal with respect to residency, because there were all preconditions of it, and specifically, very specifically, in the notice of appeal, these prior decisions, prior judgments, were part of the notice of appeal and specifically consolidated. If you look at the number on the top of the decision with respect to residency, it lists all these numbers, because they had to be there. Let's take specifically the judgments that were entered in this case. You're not now trying to re-litigate the residency issue. I'm not trying to re-litigate anything. The core question, Your Honor, which underlined everything, is who do they pay the taxes to, each of the people? Do they pay it to the Virgin Islands or do they pay it to the IRS? Judge Sanchez said it all goes to the IRS. Nothing goes to the Virgin Islands. This court split it, and so something had to be done with the judgments, the prior judgments, which gave it all to the IRS and nothing to the Virgin Islands. Otherwise, the Virgin Islands will never be able to collect, because there's a judgment throwing out their case, and the IRS has a judgment which entitles them to collect on not only from the three girls, but also from the two people who are not residents of the Virgin Islands. What are you asking us to do? Well, what I'm asking you to do first is to reverse with respect to the finality question and raise judicata. Judge Sanchez's order? Yes. That, I think, has to be done, because what he's mistaken on and what the IRS is mistaken on, it's not a collateral attack when a case goes up on appeal. There's a reversal in part. It's sent back to a district judge. The district court judge knew that things had to be done. He issued an order saying, let me know what I have to do. The IRS says you have to issue new judgments and modify some of the judgments, and then we make a motion at that time to dismiss on jurisdictional grounds. So it's timely, and it's not a collateral attack. It's part of the direct appeal. Hasn't the jurisdictional issue been resolved? He refused to touch the jurisdictional issue. The Vento decision. Didn't the Vento speak to jurisdiction? I'm sorry. Didn't the Vento decision speak to found jurisdiction? No. No. No? No. All it did was it dealt with a narrow issue of residency. In the opinion, don't they say we have jurisdiction over this matter? Well, again, there's a big difference between saying we have jurisdiction when no one challenges jurisdiction. And if you look at the Petaluma decision, the court is very good on that aspect of the decision, saying just because you note that you have jurisdiction doesn't mean that you cannot challenge the substantive subject matter jurisdiction. There's a unique aspect here, and let me try to give you an analogy to try to make it clearer. May I ask a question before I lose my thought on this? Sure. It's easy in a case like this. The Vento decision. The Vento decision decided that the three sisters were residents of the United States. Correct. And that Mr. and Ms. Vento were citizens of the Virgin Islands. Correct. Did that decision ever appeal to you? That decision was a petition for re-hearing. That was the decision of the Court of Appeals. That was Sean Bergman's decision, so that pretty much decides the issue of residency. Correct. And therefore, what you have to do is correct the other judgments that have been entered predicated upon that, and that had to be done by the district court. The district court had to come up with an order now which says with respect to, you know, the Virgin Islands application of its FPA with respect to these LLCs, it's incorrect to hold that Dick and Lana are not residents of the Virgin Islands, which is what he held. Is it Judge Sanchez's decision has to be corrected? It has to be. You can either do one of two things. One is you can remand for him to address the substantive issue, or we suggest in our papers that since it's all been briefed and it's a legal issue, you can address it ab initio by this court. That's a question of judicial economy, and it's a question of the attitude that this court has. If you want the trial judge to first give you an opinion, you remand it, let him make a decision. If you say it makes no difference because it's a matter of law, you can address it on your own. And that's completely up to the discretion of the court. My preference would be since you have everything decided, but that is work where you don't have to do the work. So I understand the reality of the situation. But what I was trying to specifically address for one moment is that there are two steps in this process. There's the partnership step, and then you get to the partner step. You have to have the partnership step resolved. You asked the question as to whether or not there was jurisdiction, and I was going to give you an analogy. Let's assume you get a ticket from a Philadelphia police officer returnable in the Philadelphia courts, but it's issued while you're outside of Philadelphia. The way this structure is, you have jurisdiction to go to the Philadelphia city court saying you have to dismiss this, because the officer had no jurisdiction to issue the ticket outside of Philadelphia. That's essentially the way the structure is. It's strange. But that's the structure in terms of the code. It says you have to file within 90 days a challenge to the FPAS. Then if you go through the whole structure of it, you can then challenge the subject matter jurisdiction in that court for an ultimate determination that you didn't have jurisdiction, the IRS didn't have jurisdiction, and that the district court didn't have jurisdiction, analogous to the situation that I described. Let me just quickly jump over to the decision in Petaluma, because the judge is highly regarded, but there is a part of that decision that just simply makes no sense. And what he did, and I'll summarize it very quickly, he did two things. One, the issue had never been raised by any of the parties. He decided that this is the answer, and none of the parties addressed it. It never was raised before, and he basically said that when you have a statute, when the statute says it becomes effective October 4, 2001, and then it says C, the prior temporary regulations, he said, ooh, that's an incorporation by reference. Well, the word C is normally not an incorporation by reference, particularly when the statute says that the whole section becomes effective October 4, 2001. And then you read the preamble, which we cite, and the preamble makes it crystal clear that this is not an incorporation by reference. The IRS believed that the temporary regulations were valid. So they would never suggest you incorporate by reference. They're saying they're valid. And so you're in a situation where you incorporate by reference when no one thought that that was incorporated by reference, and then he does something which is also a little bit unusual, and he says, well, they also said that they eliminate the prior temporary regulations. What is unusual about that is if these regulations, temporary regulations were still in effect, you don't eliminate them. You incorporate them, and you make them part of the new regulations. No, they've been eliminated. So I strongly suggest if you look at the first part of his decision in Petaluma, it makes a lot of sense, and it's well done, but when he goes off without the benefit of briefing and arguments by counsel, and in my humble opinion, briefs and arguments by counsel have some value, they sometimes stop a judge from going off on a frolic and detour. And that's what happened here. He went off trying to find a reason, and it's been criticized by a number of legal scholars because it just doesn't have any basis in the legal principles that apply to tax issues. Mr. Joshua, thank you very much. You saved some time for rebuttal. Ms. McLaughlin. May it please the Court, good morning. For the record, my name is Theresa McLaughlin, and I represent the United States. The government's position is that the district court was correct in refusing to reopen this matter. What about the unattended business, as it were, that Mr. Gershwitz is referring to? The unattended business? Well, Judge Sanchez still needed to do some things or decide some issues. Oh. Well, when the case came back, including, well, I should back up, on appeal the government's position was that nothing needed, that even if there was a reversal, nothing needed to be done to the final judgment accepting the FPAW's merits adjustments and conceding the penalties because... This is after our decision in Ventura was... Well, it's... The government's position in its brief in the residency case was that the FPAW, the federal FPAW could still stand. The other side thought it shouldn't, but on the last page of its opinion in the residency case, this court said we don't need to look into the residency of the federal FPAW case because that will follow with the residence of the individual partners. So when the... The two partnerships, the essential partnerships. Yes. Who were the owners of the two partnerships? Now, let me let you answer the question. Okay. Who were the owners of the partnerships? Well, there were LLCs. The general partner of VI Derivatives LLC was VIFX, and the Vento parents were... I think they owned either VFIX or an entity behind, upstream of VIFX, but also there were LLCs that were formed for the benefit of the Vento daughters who were determined to be residents of the United States. So our position is that the first... The final judgment in the FPAW, federal FPAW proceedings, final judgments, plural, were raised judicata. Whether in... VIFX has in fact... Is that correct? I don't know, Your Honor, because what the FPAWs did in this case were the essential thrust of them was to declare that the partnerships were a sham, and once you get rid of, sorry, a sham partnership, then it's the LLCs or the individuals behind them who are conducting the transactions. So... But there was... Just my recollection of the reading is that there was a concession. Yes, we owe these taxes. Oh, they conceded that the transactions did not create the loss. This was an abusive tax shelter that's called Son of Boss, and the LLCs and the taxpayers conceded that these transactions, these offsetting transactions in market-linked deposits did not create a loss. So... Anyway, our position is that those initial judgments that were entered and then were appealed are preclusive and final, because the federal rule is that once, you know, a final appealable judgment is entered, which unquestionably happened, that has preclusive effect even while it is on appeal. So this attempt to reopen the case now is a collateral attack that can only be done under 60B4, Rule 60... How do you understand Mr. Dershowitz's argument? That no judgment, no final unappealable judgment has been entered? Well, when the case got back to the district court, the district court said, and there are several cases, not just the federal FBAW cases, what, if anything, do I need to do, what needs to be done to dispose of these cases in light of the mandate, which is a reasonable question. And he asked the parties to tell him. And the government's position was... I think... I'm mixed up just at the moment about whether this was the government's position or their position. Oh, the government's position, which is at JA-287, was that all issues have been resolved and that the court can enter final judgment. And even the taxpayers' positions, which is at JA-293, respecting these two cases were confirm resolution of all issues raised in proceedings in FPAW. So there wasn't really too much disagreement that these cases were basically over. Before the district court... And the district court may want to do something, like saying, these cases are closed. And it's true, it hasn't done so. But that doesn't detract from the preclusive effect of the judgments that already went up on appeal and where the courts... They could have, in those direct appeals, the other side could have challenged the subject matter jurisdiction of the court, but they didn't. They conceded it. And the court found... I think at page 7 of its opinion that there was jurisdiction. The Vento opinion you're talking about? The Vento residency opinion in this court. And so the initial judgments that went up are preclusive. And the only way the case can be reopened is under the Rule 60b-4 as a void judgment. Was this a concession made before Judge Sanchez? They invoked... They didn't just submit to the jurisdiction. They brought these cases and they alleged that there was subject matter jurisdiction. But even so, the Supreme Court and this court both think that subject matter jurisdiction, although it can be challenged even on direct appeal, that if you waive it, then you're still precluded. And that has to be right because otherwise every judgment could be reopened as a void judgment. When it's clear under the cases under Rule 60b-4 that there has to be... that it's a much more limited question that it's not whether there's a mere error in the exercise of... Can you refer to the explicit words that were used when, as you claim, subject matter jurisdiction was waived? Are you saying it was waived by not objecting to the court's jurisdiction or was it waived because there was an explicit statement by one of the parties that subject matter jurisdiction was waived? Well, in these cases, there was an express admission that there was subject matter jurisdiction in the district court. But the cases also say that even if you don't admit it and you merely waive it, by the time you get to the end, you can't collateral... it is res judicata and it... Do you waive it by not objecting to it? Yes, you can. And the Supreme Court said so in the Chico County Drainage District case and this court has said so, I believe, in the Marshall and Hodge cases. Is it your position that that's what happened in this case? There was no... That they not only submitted to it and they didn't only waive it, they admitted that there was jurisdiction, they invoked the court's jurisdiction. And the residency opinion says much. Yes, I believe on page 7 of the residency opinion, the court said we have jurisdiction over these cases. Also, the one thing I heard about the validity of the regulations was a disagreement with the D.C. Circuit's decision in the Petaluma case that what the controlling regulation... is a final regulation rather than the temporary regulation. And we think it's perfectly straightforward that... and we now agree with the D.C. Circuit's formulation that the regulation has a bifurcated effective date. It is the text of the final regulation from the time of its adoption on October 4, 2001. And for cases in taxable years beginning before that time, it incorporates by reference the text of the temporary regulation that was then extant and replaces it. And the final regulation was adopted with notice and comment, although we think that these are interpretive regulations where that provision of the APA doesn't apply. And it's true that the final regulation is adopted with retroactive effect for taxable years beginning before its adoption. But that was expressly permitted by Section 7805 of the Internal Revenue Code, which is a pre-APA position. So there doesn't have to be a 30-day waiting period before a regulation goes into effect. So there was no violation of the APA. Unless the Court has any other questions... Judge, may I ask you any questions? Yes, can you hear me? Yes, Your Honor. All right, good. Is there any impact on the FPAs that were incorporated into final judgments in January of 2012 as a result of the Vento residency decision? Well, since this Court said we need not grapple with the residency issue, any residency issue in the federal FPA cases, because the taxation will follow the residence of the individual partners. So it was a decision that they didn't need to decide residency. But it's important that the issues in the federal FPA cases, you know, could have been brought up in that direct appeal, and they were not. And as has been pointed out, the taxpayers conceded that the market-linked deposits, transactions, didn't generate a loss. So, in effect, the decisions which the main thrust of which was that there's no real partnership. If a partnership is just a device, therefore, we'll disregard it and taxation will follow at the individual partner level. And that remains, in effect, that is the effect of the first decision on appeal. Okay. Thank you very much. Thank you. Mr. Dershowitz. May I ask for an additional three minutes, because I have a whole list of items that I need to cover. No, just stick with your three minutes. Okay. All right. We've got other things we've got to get to. I understand. It was worth trying. The footnote that we're talking about, let me just read it. It says, The District Court made no findings with respect to the VENTO partnerships. Because these partnerships are passed through entities, citation, they do not have residencies separate from their owners. That is a correct statement, and that's consistent with what happened below. So, what you had then is Judge Sanchez, when he made the residency decision, he doesn't say, is the partnership a resident of the Virgin Islands? He looks at the individual partners. Nothing. But what he then did and had to do is with respect to the FPAWS, we submitted to the court as supplemental documents, the judgment. So, a judgment is entered on February 18th, right after he renders his residency decision with respect to, I'm taking one of them, with respect to the Virgin Islands and VI derivative. And he says the action before this court, this trial, ordered a judge that Richard VENTO was not a resident, was not a bona fide resident of the United States on that date, and therefore he ends up dismissing the Virgin Islands action. It necessarily follows from his decision. What this court was saying is this order, we don't have to say whether the partnership was a resident of the Virgin Islands or the partnership was a resident of the United States. We have to look at the partners. So, this order has to be changed to reflect the decision and to eliminate the conclusion with respect to Richard and the conclusion with respect to Lana. That remained to be done. Judge Restrepo, with respect to your jurisdictional question and the statement of jurisdiction, some of the case, some of the parts that went up, clearly the court had jurisdiction. The individuals, they had jurisdiction over. They ended up all being consolidated. The court never dealt with the question as to whether they had jurisdiction over the entities, the LLC entities. And the argument, and it's a very simple argument, is that under the statute, originally as passed, the IRS and the court has jurisdiction over partnerships. Let's first decide partnerships and then we'll get to partners. Very simple. But what happens if you decide that it's not a partnership, it's a sham? Do we have jurisdiction to deal with that? So, what the Congress did was we passed an amendment, a new statute, that says if it's a sham, subject to regulations established by the IRS, you can then deal with it. And the argument is a very simple one. If Congress says you must pass regulations to make it effective and they don't, they're out. They have to do what Congress says they have to do. Congress gave them the power, gave them a mandate to do so. For 14 years, they refused to follow what Congress said. That's their problem. They're the ones who violated the law for 14 years by having temporary regulations. Congress passed new laws afterwards saying you can't do that. You have to pass regulations when we tell you to pass regulations and we tell you the statute becomes effective when you pass regulations, you have to do what we tell you to do. Thank you. You've made some very good arguments and helped us quite a bit. Now, I think what would also be helpful is if we can get a transcript of the proceedings. Some of this we have to give a little more thought to. So, I'll ask you to get together, share the expense, speak to the clerk, so that we can produce a copy of the transcripts of the arguments today. All right, thank you. We'll do that. Thank you very much. Thank you, guys. Court is adjourned until Thursday at 10 a.m.